MEMO ENDORSED

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**



RONICALLY FILED
DATE FILED: 5-24-22

**UNITED STATES OF AMERICA**

    **Plaintiff(s)**

**V.**
                **Criminal Case No. 18-cr-00781**

**JEFFERSON SANCHEZ**
**BOP Inmate No. 85558-054**
    RECEIVED
    APR 27 2022

    **Defendant**
    S.D.N.Y.

---

### MOTION REQUESTING A JUDICIAL RECOMMENDATION CONCERNING LENGTH OF RRC/HALFWAY HOUSE PLACEMENT

---

    COMES NOW, the Defendant, Jefferson Sanchez, pro se and unskilled in the field of law, and respectfully moves this Honorable Court to recommend that the Bureau of Prisons ("BOP") afford the Defendant the maximum Residential Re-entry Center ("RRC")/halfway house placement time of 12 months preceding the end of his sentence. In support thereof, Defendant states as follows:

1.  On April 22, 2021 Defendant was sentenced by this Court to a term of twenty four plus five (29) months imprisonment followed by a term of three years of supervised release.

2.  **The First Step Act requires the BOP to put lower-risk, lower-needs people in home confinement for the full amount of time permitted under current law (10 percent of the person's sentence or 6 months, whichever is less). The Second Chance Act** allows eligible inmates to be released to a Halfway House for a maximum of 12 months, and part of that time can be spent in Home Confinement, (See **bolded** first sentence above). Mr. Sanchez is a lower-risk, lower-needs inmate.

*[handwritten:]* The Court declines to make any recommendation, one way or the other.

*[handwritten:]* Recommendation Denied.

**SO ORDERED**

LEWIS A. KAPLAN, USDJ   5/24/22

3. Pursuant to the Second Chance Act of 2007 ("SCA") the BOP may place a defendant into RRC/halfway house up to twelve months prior to his/her release date if it is determined that Mr. Sanchez's placement in a halfway house is of *"sufficient duration to provide the greatest likelihood of successful reintegration into the community."*

4. The criteria that the Bureau of Prisons is to consider in assessing an individual applicants' eligibility for up to twelve months of RRC/Halfway House are: any statement made by the Court concerning the purposes that warranted a sentence to imprisonment and recommending the type of correctional facility that would be appropriate. 18 U.S.C. 3621(b)(4)(A), (B). **(See Exhibit 1a – Granted 12 month RRC motions).** An RRC/halfway house is a correctional facility with superior transitional programs to help inmates rebuild their ties to the community.

5. Title 18, United States Code, section 3582(c) provides that a "court may not modify a term of imprisonment once it has been imposed except" in very limited circumstances, and Mr. Sanchez is not asking the court to modify the sentence. He is asking the Court to simply change the place of incarceration of the sentence per the Second Chance Act, a federal law.

6. Mr. Sanchez is currently housed at FCI Fort Dix, Joint Base MDL in New Jersey 08640. His release date is April 2, 2023, and an RRC placement will not affect this.

7. According to Federal Bureau of Prisons' Memorandum for Chief Executive Officers, June 24, 2010, (see **Exhibit 1b: Revised Guidance for Residential Reentry Center (RRC) Placements**) Extended Pre-Release RRC/Halfway House time decisions *"are to focus on RRC placement as a mechanism to reduce recidivism."*.

8. Mr. Sanchez is 38 years old. He is young enough to be reformed and rejoin law-abiding society with all the help available from prolonged placement at a federal halfway house.

9. Mr. Sanchez does not have promotional vocational prospects waiting without retraining assistance at a federal RRC.

10. The purpose of the Second Chance Act of 2007 is to improve the reintegration of offenders back into their respective communities and to reduce recidivism. While ultimately left to the discretion of the BOP, RRC/halfway house placement must be

(A) conducted in a manner consistent with section 3621(b) of this title;

(B) determined on an individual basis; and

(C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community, 18 U.S.C. § 3624(c)(1)-(2).

11. A recommendation that Mr. Sanchez be placed for 12 months at an RRC/Halfway House would be consistent with the reintegration principles of the Second Chance Act and would allow Mr. Sanchez to better address the underlying impetus that led to commission of his instant offenses.

12. A recommendation that Mr. Sanchez be afforded the maximum RRC/Halfway House placement time of 12 months would maintain the integrity of the disposition while still preserving the punitive aspect of his sentence and would allow Mr. Sanchez the opportunity to address and correct his elevated risk of recidivism by virtue of the nature of his instant offenses, lack of permanent release residence, no release employment established, substance abuse, HIV, negative net worth, lack of savings or assets, untreated medical problems but no medical insurance, and a 29 month sentence.

He will remain under the auspices of the BOP while in the supervised environment of the RRC.

13. Mr. Sanchez expressed exceptional remorse and contrition regarding his commission of his offenses.

14. The Attorney General of the United States and the Inspector General of the BOP have noted in reports and public statements that the BOP is under-utilizing various rehab programs available, such as RRC/halfway house. The judicial recommendation requested would be non-binding on the BOP.

WHEREFORE NOW, above premises considered, the defendant respectfully requests that this Honorable Court GRANT his motion and all relief requested herein, issuing a judicial recommendation to the BOP that Defendant be granted the maximum placement time of 12 months of halfway house, reflecting the same and granting all other relief required by Law, Liberty, and Equity.

Done this 11ᵗʰ Day of April 2022

Respectfully Submitted,

x _Jefferson Sanchez_

Jefferson Sanchez, Register # 85558-54
FCI Fort Dix
PO Box 2000
Joint Base MDL, NJ 08640

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I have served a copy of this pleading upon the Clerk of the Court, VIA US Mail, properly addressed, First-Class Postage prepaid. The accused further requests that a copy of this pleading be forwarded to all parties, VIA the CM/ECF System, as I am indigent, detained, and have no other means.

Done this 11th Day of April 2022

Respectfully Submitted,

X _____

Jefferson Sanchez, Register # 85558-054
FCI Fort Dix
PO Box 2000
Joint Base MDL, NJ 08640

Exh. bit 1A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Case No. 3:15-CR-307-M (12) |
| | * | |
| MONICA MALDONADO-PENA, | * | |
| Defendant. | * | |

**ORDER**

On this date came on to be considered the Defendant's Motion Requesting a Judicial

Recommendation Concerning Length of RRC/Halfway House Placement, filed October 16, 2017. Said

Motion is **GRANTED**.

The Court recommends Defendant Maldonado-Pena be placed for twelve (12) months at an

RRC/Halfway House.

SO ORDERED.

DATED: November 15, 2017.

Barbara M G Lynn

BARBARA M. G. LYNN
CHIEF JUDGE

# EXHIBIT 1B



Federal Bureau of Prisons

*Washington, DC 20534*

June 24, 2010

MEMORANDUM FOR CHIEF EXECUTIVE OFFICERS

FROM:         D. Scott Dodrill, Assistant Director
              Correctional Programs Division

SUBJECT:      Revised Guidance for Residential Reentry Center
              (RRC) Placements

This memorandum provides guidance to staff when making inmates'
pre-release Residential Reentry Center (RRC) placement decisions.
Assessment and decision-making practices are to focus on RRC
placement as a mechanism to reduce recidivism.  Recidivism
reduction results in cost efficiencies, less victimization, and
safer communities.

Our RRC resources are limited and must be focused on those
inmates most likely to benefit from them in terms of anticipated
recidivism reduction.  In other words, our decisions are to be
based on an assessment of the inmate's risk of recidivism and our
expectation that RRC placement will reduce that risk.  Our
strategy is to focus on inmates who are at higher risk of
recidivating and who have established a record of programming
during incarceration, so that pre-release RRC placements will be
as productive and successful as possible.

As Chief Executive Officers, you play a vital role in
implementing the Bureau of Prisons' (Bureau) reentry strategy,
including RRC utilization.  This guidance will assist you in
making RRC placement decisions.

**GENERAL CONCEPTS** - The following general concepts apply to all
RRC placement assessments and decision-making:

**Eligibility vs. Appropriateness** - When making RRC placement
determinations, it is critical that staff understand the
difference between eligibility and appropriateness.  All inmates
are statutorily eligible for up to 12 months pre-release RRC

-1-

placement.  Nevertheless, not all inmates are appropriate for RRC
placement, and for those who are appropriate, the length of the
RRC placement must be determined on an individual basis in
accordance with this guidance.

**Individual Assessments Required** – Inmates must continue to be
individually assessed for their appropriateness for and the
length of pre-release RRC placements using the following five
factors from 18 U.S.C. § 3621(b):
> (1) The resources of the facility contemplated;
> (2) The nature and circumstances of the offense;
> (3) The history and characteristics of the prisoner;
> (4) Any statement by the court that imposed the sentence:
>> (a) concerning the purposes for which the sentence to
>> imprisonment was determined to be warranted; or
>> (b) recommending a type of penal or correctional
>> facility as appropriate; and
> (5) Any pertinent policy statement issued by the U.S.
> Sentencing Commission.

These individual assessments occur as part of the inmate
classification and program review process, with the unit manager
holding decision-making responsibility at the unit level.
Institution- or region-specific parameters for RRC placement
decision-making are prohibited.

**RRC Placements of More Than Six Months** – Regional Director
approval of RRC placements longer than six months is no longer
required.

**Residential Drug Abuse Program Graduates** – Inmates who
successfully complete the institution-based portion of the
Residential Drug Abuse Program (RDAP) will continue to be
assessed for pre-release RRC placements according to the guidance
in the Psychology Treatment Programs policy.

**Coordination Between Institution Staff and Community Corrections
Management Staff** – Community Corrections Management (CCM) staff
must continue to review referral documents and other pertinent
information for every RRC referral.  If CCM staff question the
appropriateness of the referral or the length of the requested
placement, they must communicate these concerns to the referring
institution.  Differing recommendations will be resolved at the
appropriate level within the regional management structure.
Under no circumstances should CCM staff unilaterally deny RRC
referrals or adjust placement dates, unless these determinations
can be linked directly to a lack of RRC bedspace or fiscal
resources.

-2-

**Medical and Mental Health Concerns** – When considering RRC placement for inmates with significant medical or mental health conditions, institution staff are strongly encouraged to coordinate release planning with CCM staff and Transitional Drug Abuse Treatment staff (for mental health concerns).  If an inmate's condition precludes residential placement in an RRC, and if staff can make appropriate arrangements to secure the community-based medical and/or mental health services these inmates will need, direct placement on home detention should be considered.

**Inmates Who Decline RRC Placement** – If an institution recommends release through a community-based program and the inmate declines, institution staff should counsel the inmate as to the benefits of a structured reentry program.  However, if the inmate continues to decline this opportunity, she/he may do so without being subject to disciplinary action.

**Inmates Who are Inappropriate for RRC Placement** – Inmates who, during incarceration, have refused programming or failed to engage in activities that prepare them for reentry may be inappropriate for RRC placement.  Similarly, inmates with recent, serious, or chronic misconduct and those who have previously failed an RRC program may be inappropriate.

RRCs provide opportunities for inmates to acquire the support systems, e.g., residence, employment, follow-up treatment, they will need to live a crime-free life, but inmates must be ready to take advantage of these opportunities.  If they have clearly demonstrated through their behavior that they are not ready, RRC programming is unlikely to result in behavioral change and would be a waste of the Bureau's resources, as well as place the public at undue risk.

Professional judgment must be exercised, insofar as inmates with some misconduct, or some refusal to participate in programming, may still be appropriate for RRC placement.  Staff must exercise their discretion in determining whether an inmate is ready to take advantage of the opportunities and expanded liberty that RRCs offer.

If staff decide not to refer an inmate for RRC placement, the inmate's release should be carefully coordinated with U.S. Probation or Court Services and Offender Supervision Agency (DC Code inmates).

–3–

**Professional Judgment** – RRC placement, in and of itself, is not a reward for good institutional behavior, nor is it an early release program or a substitute for the furlough program. RRC placement and length of placement decisions cannot be reduced solely to a classification score or any other type of arbitrary categorization. While staff assessment and analysis of tools such as the Custody Classification Form (BP-338) and the Inmate Skills Development (ISD) Plan are helpful in establishing broad-based groupings, staff must continue to exercise their professional judgment when making individual inmate RRC placement decisions and be prepared to justify those decisions.

## LENGTH OF RRC PLACEMENT

**General Guidelines**

- **Prospective Application** – Inmates with previously established RRC transfer dates will not be reconsidered under this guidance.

- **90 Days Minimum Placement** – With the exception noted below under the heading of Lower-Risk Inmates, inmates should be considered for at least 90 days pre-release RRC placement whenever possible.

- **High-Risk Versus Low-Risk Inmates** – RRCs are most effective, in terms of recidivism reduction, for inmates at higher risk for recidivism. Consequently, appropriate higher-risk inmates should be considered for longer RRC placements than lower-risk inmates. The BP-338 measures some of the factors that predict risk. Ordinarily, the lower the BP-338 score, the lower the risk; conversely, the higher the score, the higher the risk. Therefore, low-, medium-, and high-security inmates tend to be higher risk than minimum-security inmates.

  Similarly, the ISD tool identifies deficits that may contribute to recidivism. Inmates with a significant number of deficits may be at higher risk for recidivism than those with few or no deficits. When making RRC placement decisions, staff should ensure that the BP-338 and ISD Assessment have been accurately completed. While neither tool can be relied upon solely, they are helpful tools in assessing an inmate's risk level.

**Lower-Risk Inmates**

- **Consider Home Detention Option** - With the exception of RDAP graduates, institution staff will evaluate minimum-security inmates who have an approved release residence to determine if direct transfer from an institution to home detention is appropriate. If so, this determination will be noted in item 11 of the Institutional Referral for RRC Placement form, and the requested placement date (item 3.b.) will be the inmate's home detention eligibility date. These procedures are to be followed even if this results in a community-based placement of fewer than 90 days.

- If a minimum-security inmate is not appropriate for direct placement on home detention, staff will request an RRC placement of sufficient length to address the inmate's reentry needs.

- CCM staff are to ensure that procedures are in place for the direct placement of inmates on home detention, or after only a brief stay (14 days or less) in an RRC. At a minimum, CCM staff must monitor their minimum-security population weekly and follow up with RRC contractors to ascertain why eligible minimum-security inmates have not been referred for placement on home detention.

**Higher-Risk Inmates** - As previously stated, in terms of recidivism reduction, inmates at higher risk for recidivism stand to benefit most from RRC services. When considering the length of the RRC placement for higher-risk inmates, staff should consider the following:

- **History of Individual Change** - Assess whether the inmate's history of individual positive change during incarceration indicates an ability and willingness to take advantage of opportunities for positive reintegration to the community. Based on that history, staff must predict whether the inmate is likely to respond positively to the highly structured regimen of an RRC, and whether the inmate will avail her/himself of the available RRC opportunities.

- **History of Program Participation** - Assess the inmate's history of successful completion of, or participation in, available programming opportunities during incarceration, including programming which addresses the deficits identified through the ISD System. In particular, determine whether the inmate completed or made satisfactory progress toward completing a program shown to reduce recidivism, such

-5-

as any of the cognitive/behavioral treatment programs
described in the <u>Psychology Treatment Programs</u> Program
Statement, as well as academic and vocational training
programs.

- **Inmate's Community Support Systems** - Assess the inmate's
  available community support systems, e.g., housing,
  employment, etc.

- **Length of RRC Placement** - Longer RRC placements should be
  considered for inmates whose following factors are high:

  - ➢ Risk for recidivism;
  - ➢ Demonstrated successful participation in or completion
      of programming opportunities; and
  - ➢ Need to establish community support systems.

Your assistance in implementing these procedures is appreciated.
I look forward to working with you as we seek to effectively
utilize the Bureau's limited RRC resources.

Jefferson Sanchez [illegible]
FCI FORT DIX
P.O. Box 2000
Joint Base MDL, NJ 08640

Clerk of the court
40 Foley Square
Manhattan N.Y. 10007

